Filed 7/7/25  P. v. Gonzales CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE MARTIN GONZALES,<br><br>    Defendant and Appellant. | F087118<br><br>(Super. Ct. No. BF170426A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  Gregory A. Pulskamp, Judge.

Paul Stubb, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Defendant Jose Martin Gonzales appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.6[1] (former § 1170.95).[2] On appeal, defendant argues the trial court erred in denying his petition because substantial evidence does not support that defendant's actions caused Isaac Ortiz's death or that he acted with implied malice. However, because the record indicates the trial court did not analyze the proper elements in denying defendant's section 1172.6 petition and its decision was based on a misunderstanding of the legal requirements of direct aiding and abetting implied malice murder, we reverse and remand for a new evidentiary hearing.

**PROCEDURAL BACKGROUND**

The District Attorney of Kern County filed a consolidated complaint on December 8, 2017, charging defendant, codefendant Carlos Danny Garcia, and codefendant Manuel Cadena Martinez with premeditated murder (§ 187, subd. (a)) and alleging defendant had two prior strike convictions within the meaning of the "Three Strikes" law (currently codified at §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and two prior serious felony convictions (§ 667, subd. (a)).

On April 18, 2018, the trial court granted the prosecution's motion and amended the consolidated complaint to charge all defendants with voluntary manslaughter (§ 192, subd. (a); count 2), charge Garcia with assault with a deadly weapon or by force likely to produce great bodily injury (§ 245, subd. (a)(1); count 3), allege Garcia inflicted great bodily injury (§ 12022.7), and allege that defendant had two prior strike convictions and a prior serious felony conviction as to count 2. Defendant pleaded no contest to count 2 and admitted the prior strike and prior serious felony conviction enhancements, resulting

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no substantive change in text. (Stats. 2022, ch. 58, § 10.)

in a recommended sentence of 16 years as part of an agreement with the prosecutor.[3] Defendant's attorney stipulated that the offense report provided the factual basis for the plea. On May 16, 2018, the trial court ordered that defendant's prior strike convictions be stricken and sentenced him to 16 years in prison.

Defendant filed a petition for resentencing pursuant to former section 1170.95 (now § 1172.6) on August 22, 2022, alleging that he had accepted a plea offer to voluntary manslaughter in lieu of a trial in which he could have been convicted of murder under theories of felony murder or the natural and probable consequences doctrine but could not now be so convicted due to changes made to sections 188 and 189. The trial court appointed counsel for defendant and ordered the prosecutor to file a response to the petition.

When the prosecutor failed to timely respond to defendant's petition, the trial court agreed that defendant had showed his prima facie entitlement to relief and issued an order to show cause for an evidentiary hearing on June 2, 2023. The trial court held the evidentiary hearing and took the matter under submission on August 17, 2023. The trial court issued its order denying defendant's petition on September 18, 2023.

Defendant filed a timely notice of appeal on November 2, 2023.

## FACTS

### I. *Preliminary proceedings.*

The prosecution opposed defendant's petition, arguing that he aided and abetted his codefendants to murder Ortiz with implied malice by chasing Ortiz on a bicycle until Ortiz fell, then punching Ortiz at least two times before his codefendants joined in, and he lacked adequate provocation because he was motivated by Ortiz's status as a sexual

---

[3] Garcia pleaded no contest to counts 2 and 3 and admitted inflicting great bodily injury as part of his agreement with the prosecutor to receive a recommendation for a nine-year aggregate sentence. Martinez pleaded no contest to count 2 as part of his agreement with the prosecutor to receive a recommendation for a three-year sentence.

offender. The prosecution also argued that the trial court could rely upon the offense report to make its decision because defendant had stipulated to use of the report to establish the factual basis for his plea. Defendant objected to use of the report pursuant to section 1172.6, subdivision (d)(3). The trial court determined that the factual basis stipulation did not include an agreement as to the specific facts involved in the offense and the generic stipulation to use the report to establish the factual basis did not operate as a stipulation to admit the report as evidence in the section 1172.6 hearing.

## II.     *Evidentiary hearing.*

Sergeant Fred Torres testified that he was assigned to investigate Ortiz's assault on November 7, 2017. Sergeant Torres and a crime scene technician collected video from the location of the assault. The camera was located on a residence and did not capture images of the assailants or victim when they moved to the area underneath it. Sergeant Torres testified that the video shows that Ortiz falls into a tree in the yard of the residence just as the video commences. At the same time, defendant dismounts a bicycle at the curb, runs towards the camera, raises his right arm, and brings his fist back and then forward toward Ortiz, who is out the camera's view. A second individual arrives 22 seconds into the video, a third individual arrives at 35 seconds, and both individuals run toward the camera and out of view underneath it. All three individuals leave the area at approximately 45 seconds.

Sergeant Torres responded to the hospital after the assault and observed Ortiz lying on his back wearing a hospital gown with a breathing tube. Ortiz had scratches on the left side of his face, redness and bruising under his left eye, and bruising on the lower left side of his back and buttocks. Sergeant Torres viewed the location of the assault and examined the tree that Ortiz had fallen against approximately three days later. Although the weather conditions had not changed since the assault, Torres did not see any blood, skin, or other items of significance on the tree.

Sergeant Torres was notified that Ortiz had died and returned to the hospital with the coroner and crime scene unit technicians on November 12, 2017. Torres witnessed the coroner process Ortiz's body.

On November 22, 2017, Sergeant Torres arranged to meet with defendant at the police department. Defendant waived his rights, and Torres interviewed him. Defendant's initial description of his involvement in the assault changed once Sergeant Torres advised him that there was video of the incident. Defendant became visibly upset, sweaty, trembly, and began to cry. Defendant identified himself as the individual in a photograph, taken from the video, arriving on a bicycle and pulling back a clinched fist. Defendant admitted that he rode his bicycle to catch up to Ortiz and punched Ortiz at least twice.

Dr. Robert Whitmore, a forensic pathologist with the Kern County Coroner's Office, conducted the autopsy of Ortiz. He saw an abrasion on the external right side of Ortiz's head and, after opening the scalp, a hemorrhage (or bleeding) inside the right temple muscle underneath the abrasion. Further evaluation revealed a skull fracture to the right side of Ortiz's head, which intersected with a second fracture extending to the base of his skull and forming an "L" shape. Such a fracture would require an extreme amount of force to create. Ortiz also suffered a hemorrhage over the left and right sides of his brain between the brain and the dura, which is a membrane that lies over the brain.

Dr. Whitmore observed additional fractures to the orbital plates overlying both eyes. He also observed a fracture in the middle part of the right side of the skull base, moving from right to left, that continued from the L-shaped fracture. Ortiz's brain exhibited blunt force injuries such as brain swelling, herniation, and hemorrhages over the left and right sides and at the base. Other hemorrhages occurred in the right basal ganglia (a gate structure in the brain) and inside the ventricular system where cerebrospinal fluid is made and circulates.

5.

Dr. Whitmore opined that a significant amount of force would be needed to cause these injuries and could possibly be caused by someone stumbling and hitting their head on a tree trunk, or by several individuals administering several blows to the head. However, he concluded that Ortiz died as the result of blunt force head trauma at the hands of another and ruled out that Ortiz caused injury to himself. On cross-examination, Dr. Whitmore viewed the video from the location where Ortiz was beaten and described an individual falling and striking the right side of their head against a tree. While striking the tree would be consistent with the abrasion he observed on the right side of Ortiz's head and the fracture on the same side of the skull, "it may or may not explain the consolation [*sic*] of other injuries that I've already testified to," such as the orbital plate fractures, the hemorrhages, and the brain swelling. At the time of the autopsy, Dr. Whitmore did not observe injuries to the exterior left side of Ortiz's head, although any injuries may have healed in the eight days following when they were sustained. Dr. Whitmore did observe internal injuries to the left side of Ortiz's head and brain. While the injuries to the left side of the brain might have resulted from a transfer of force from the right side, the force of the skull hitting the tree was not extreme enough to have transferred force to the left side of the brain or to cause the left side to swell.

### III.    *Trial court's ruling.*

In its written decision, the trial court used the offense report as a general admission by defendant that the sum total of the information contained within it provided a factual basis for defendant's plea to voluntary manslaughter but found that defendant did not stipulate to the facts contained within the report for all purposes. As such, the court characterized the report as providing "minimal evidence" that only provided context to the evidentiary hearing testimony and "the basic story that it was believed that [Ortiz] died from wounds inflicted from a beating that occurred outside a building on Truxtun Avenue the night of November 4, 2017." The court additionally ruled, however, that it

could consider defendant's actual admissions described in the report—statements not included in Sergeant Torres's evidentiary hearing testimony.[4]

After reviewing the testimony and video evidence, the trial court concluded that defendant was involved in an attack against Ortiz involving two other individuals, which caused Ortiz's death even if his collision with a tree (as a result of being chased by defendant) contributed to the injuries from which he died. The court concluded that felony murder was not an applicable theory of liability because there was no target offense, that it could not conclude that defendant was the actual killer and, therefore, defendant could only be guilty as an aider and abettor in murder. The court then concluded that defendant aided and abetted murder with malice because he was a " 'major participant' who acted 'with reckless indifference to human life' so that his intent to kill can be implied."

## DISCUSSION

***I.   The trial court erred in denying defendant's petition for resentencing based upon its misunderstanding of the legal requirements of direct aiding and abetting implied malice murder.***

### A.   Applicable Law and Standard of Review

*(1)   Standard of Review*

"Ordinarily, a trial court's denial of a section 1172.6 petition is reviewed for substantial evidence. [Citation.] Under this standard, we review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " '

---

[4]   Sergeant Torres only testified to the specific admissions defendant made during the interview after being confronted with his photograph during the assault. Defendant's initial statements, while including exculpatory claims, did provide some information as to his involvement with Ortiz and others prior to the activities shown in the video.

[Citation.]  But where there is an issue as to whether the trial court misunderstood the elements of the applicable offense, the case presents a question of law which we review independently." (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*).)

(2)    *Resentencing Petition Procedure*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) " 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 846–847;[5] see Stats. 2018, ch. 1015, § 1, subd. (f), p. 6674.)  The Legislature accomplished this by amending sections 188 and 189.

Section 188, which defines malice, now provides in part:  "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), as amended by Stats. 2018, ch. 1015, § 2, p. 6675.)  Thus, Senate Bill 1437 eliminated murder liability under the natural and probable consequences doctrine.  (*Reyes, supra*, 14 Cal.5th at pp. 984, 990.)

Section 189 now limits the circumstances under which a person may be convicted of felony murder:  "A participant in the perpetration or attempted perpetration of a felony

---

[5]    After *Gentile* held that former section 1170.95 (now § 1172.6) was the exclusive avenue for relief on nonfinal judgments (*People v. Gentile, supra*, 10 Cal.5th at p. 839), the Legislature enacted Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) to specifically allow a defendant convicted of murder based on the natural and probable consequences doctrine to "challenge on direct appeal the validity of that conviction based on the changes made to [s]ections 188 and 189 by Senate Bill 1437 (Chapter 1015 of the Statutes of 2018)." (Former § 1170.95, subd. (g), as amended by Stats. 2021, ch. 551, § 2; see *People v. Oyler* (2025) 17 Cal.5th 756, 836 [recognizing that Senate Bill 1437 was enacted in response to *Gentile*].)

listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven:  [¶] (1) The person was the actual killer.  [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2.”  (§ 189, subd. (e)(1)–(3), as amended by Stats. 2018, ch. 1015, § 3, p. 6675.)

Effective January 1, 2022, Senate Bill 775 expanded eligibility for relief to also include individuals convicted of attempted murder or manslaughter where the prosecution could have proceeded under a theory of felony murder, attempted murder under the natural and probable consequences doctrine or “other theory under which malice is imputed to a person based solely on that person’s participation in a crime.”  (§ 1172.6, subd. (a), as amended by Stats. 2021, ch. 551, § 2, p. 6971; Legis. Counsel’s Dig., Sen. Bill 775.)

The Legislature also provided a procedure, described in section 1172.6, by which a person convicted of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person’s participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter could petition the trial court to vacate that conviction and be resentenced on any remaining counts.  (§ 1172.6, subd. (a)(1).)  As in this case, relief is available to either a petitioner convicted of murder, attempted murder, or manslaughter following a trial or to a petitioner that accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. (*Id.*, subd. (a)(2).)  However, a petitioner is not entitled to such resentencing relief if the prosecution “prove[s], beyond a reasonable doubt, that the petitioner is guilty of murder

9.

… under California law as amended by the changes to [s]ection 188 or 189 made effective January 1, 2019." (*Id.*, subd. (d)(3).)

After a defendant files a petition alleging entitlement to relief and makes a prima facie showing of such entitlement (§ 1172.6, subds. (a), (b)(1)(A)), the court must in most cases convene an evidentiary hearing where the People bear the burden of establishing beyond a reasonable doubt that the defendant is guilty of the pertinent crime under the new, narrower definitions. (*Id.*, subds. (c), (d).) At that evidentiary hearing, governed by the Evidence Code, the court may consider evidence admitted at any prior hearing or trial and new or additional evidence. (*Id.*, subd. (d)(3).) "Although the parties may offer new or additional evidence to meet their respective burdens, section 1172.6, subdivision (d)(3) does not contemplate a whole new trial on all the elements of murder. [Citation.] Rather, '[t]he retroactive relief provided by [section 1172.6] is a legislative "act of lenity" intended to give defendants serving otherwise final sentences the benefit of ameliorative changes to applicable criminal laws and does not result in a new trial or increased punishment.' [Citations.] Thus, the focus at the evidentiary hearing phase of [a section] 1172.6 petition is 'on evidence made relevant by the amendments to the substantive definition of murder,' which, in the context of section 188, requires 'the prosecution to prove that all principals to a murder acted with malice aforethought.' " (*People v. Vargas* (2022) 84 Cal.App.5th 943, 952, second bracketed insertion in original.)

### (3) *Implied Malice Murder*

"Murder is committed with implied malice when 'the killing is proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.' " ' [Citation.] ' "To be considered the proximate cause of the victim's death, the defendant's act must have been

10.

a substantial factor contributing to the result, rather than insignificant or merely theoretical." ' " (*Reyes, supra*, 14 Cal.5th at p. 988.)

Defendant may also directly aid and abet implied malice murder. (*Reyes, supra*, 14 Cal.5th at p. 990.) " '[N]otwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.' " (*Ibid.*) " '[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea. [Citation.] In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' " (*Id*. at pp. 990–991, second bracketed insertion added.)

"Aiding and abetting may be shown by circumstantial evidence. It is well settled that the presence at the scene of the crime and failure to prevent it, companionship and conduct before and after the offense, including flight, are relevant to determining whether a defendant aided and abetted in the commission of the crime." (*People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599.) Other relevant circumstances include "the victim's vulnerability, the number of assailants, the ferocity and duration of the attack, … the unusualness or unexpectedness of the victim's death" (*People v. Superior Court*

*(Valenzuela)* (2021) 73 Cal.App.5th 485, 502), and the defendant's motive (*Glukhoy*, at p. 599). "Giving a false statement evincing consciousness of guilt is another circumstance tending to prove aiding and abetting." (*Id*. at p. 602.)

Assault with fist can make a killing murder if "the manner of the assault and the circumstances under which it was made rendered the natural consequences of defendant's conduct dangerous to life." (*People v. Cravens* (2012) 53 Cal.4th 500, 508; see *People v. Palomar* (2020) 44 Cal.App.5th 969, 976; *People v. Efstathiou* (1941) 47 Cal.App.2d 441, 442.)

### B.        Analysis

As we explain, the court misapprehended what is required as a matter of law to prove aiding and abetting implied malice murder. Although purporting to ascertain whether defendant aided and abetted implied malice murder, the trial court reviewed the law of felony murder and definitions of "major participant" and "reckless indifference to human life" as analyzed in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. However, the necessary elements under these theories differ.

" '[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea. [Citation.] In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' " (*Reyes, supra*, 14 Cal.5th at pp. 990–991, second bracketed

insertion added.)  Accordingly, in *Reyes*, our Supreme Court explained, "[A]ssuming the life-endangering act was the shooting, the trial court should … ask[] whether [the defendant] knew that [his coperpetrator] intended to shoot at the victim, intended to aid him in the shooting, knew that the shooting was dangerous to [human] life, and acted in conscious disregard for life." (*Id.* at p. 992.)

In contrast, under the felony-murder theory described in section 189, subdivision (e)(3), the actus reus is major participation in the underlying felony, such as robbery, and not aiding or abetting the commission of the life-endangering act.  (§ 189, subd. (e)(3); *People v. Clark, supra*, 63 Cal.4th at p. 615; see *People v. Strong* (2022) 13 Cal.5th 698, 710 [clarifying Sen. Bill 1437's amendments to § 189, subd. (e)(3) codified the understanding of major participation and reckless indifference as elucidated in *People v. Banks, supra*, 61 Cal.4th 788 & *Clark*].)  The mens rea element, reckless indifference to human life (*Banks*, at p. 798; see *Strong*, at p. 710), also differs from implied malice.  The reckless indifference standard for felony-murder special circumstances is qualitatively different than the conscious disregard standard for implied malice second degree murder.  The reckless indifference standard actually requires a subjective awareness of a higher degree of risk than the conscious disregard for human life standard.  (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 126, fn. 2; see *People v. Underwood* (2024) 99 Cal.App.5th 303, 317; *People v. Johnson* (2016) 243 Cal.App.4th 1247, 1285.)

The trial court's written ruling articulated a conclusion that conflated the terms of art used in the felony-murder and direct aider and abettor with implied malice theories, finding that defendant was "a major participant who acted with reckless indifference to human life when he participated in the incident which [led] to the death of" Ortiz.  However, the trial court's finding that defendant was a major participant who acted with reckless indifference to human life is misplaced because defendant cannot be convicted

13.

under the felony-murder rule.  (See § 189, subd. (e).)  The trial court stated that "major participant" and "reckless indifference" is implied malice, but this misapprehends the elements for aiding and abetting an implied malice murder and, therefore, the court did not apply the correct elements.

In *Reyes*, our Supreme Court found the trial court failed to properly apprehend the elements of directly aiding and abetting implied malice murder and that its findings rested on an error of law.  (*Reyes, supra*, 14 Cal.5th at p. 990.)  Having found that the trial court's decision was based upon an error of law, our Supreme Court did not conduct a harmless analysis but reversed the judgment with directions to remand the matter to the trial court for further proceedings.  (*Id.* at p. 992.)

As in *Reyes*, the trial court in the present case committed reversible error by misunderstanding the legal requirements of direct aiding and abetting an implied malice murder.  Under the circumstances of this case, we also decline to analyze whether the error was harmless.  We disagree with the People's arguments that the trial court would have found defendant acted with implied malice having found that he acted with reckless indifference.  We therefore reverse the trial court's order denying defendant's section 1172.6 petition for resentencing and remand the matter to the trial court for a new evidentiary hearing and to decide defendant's petition under the correct standard of aiding and abetting an implied malice murder in the first instance.

## II.     *The trial court erred in admitting the offense report as evidence.*

Defendant has also objected to the trial court's consideration of the offense report in denying his petition.  The trial court used the report to "obtain an understanding of the crime" and used no facts therein "beyond the basic story that it was believed that [Ortiz] died from wounds inflicted from a beating which occurred outside a building on Truxtun Avenue the night of November 4, 2017."  However, the trial court later relied upon statements of defendant found within the report that were not included in Sergeant

14.

Torres's testimony, but which included a description of defendant's initial encounter with Ortiz.

We begin our analysis with an examination of the plain language of section 1172.6, subdivision (d)(3), which governs the admissibility of evidence at an evidentiary hearing and provides in part: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.… However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule."

Ordinarily, a witness's former testimony is considered hearsay and must fall within an exception to be admissible. (See, e.g., Evid. Code, § 1291.) However, the Legislature created a specific exception to this rule for section 1172.6 evidentiary hearings. As explained in *People v. Davenport* (2023) 95 Cal.App.5th 1150, this "provision unambiguously provides that a trial court ruling on the merits of a resentencing petition 'may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony,' " and the admissibility of former testimony is not conditioned upon the prosecutor's ability to show that the witness is unavailable under Evidence Code section 1291. (*Davenport*, at pp. 1158, 1160.) In this case, however, there was no prior testimony at either a preliminary hearing or a trial. Additionally, section 1172.6 provides no similar basis for admission of the offense report.

We agree with defendant that the trial court erred in considering the offense report. While defendant's statements to Sergeant Torres are admissible pursuant to Evidence Code section 1220, the trial court failed to identify a hearsay exception in the Evidence Code that would permit consideration of the offense report in lieu of actual testimony.

15.

The trial court cannot fill in gaps from the evidentiary hearing using the offense report.[6] The prosecution is required to present the circumstances of the attack through witnesses and evidence in compliance with the Evidence Code.

## DISPOSITION

The trial court's order denying defendant's section 1172.6 petition for resentencing is reversed. The matter is remanded to the trial court for a new evidentiary hearing.

FAIN, J.[*]

WE CONCUR:

SNAUFFER, Acting P. J.

DE SANTOS, J.

---

[6]     Because we are remanding for a further hearing due to trial court legal error, the prosecutor may consider whether to provide the trial court with a fuller understanding of the circumstances of the offense by presenting additional evidence as to Ortiz's condition when discovered by responding officers, testimony regarding defendant's and codefendants' initial encounters with Ortiz (whether by other witnesses or defendant's full statement to Sergeant Torres), and photographs of the area where Ortiz was beaten and not captured by the video of the incident.

[*]     Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16.